IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| Troy Rote, et al., | : |
|     Plaintiffs, | : Case No. 2:13-cv-1189 |
| v. | : Judge James L. Graham |
| | : Magistrate Judge Kemp |
| Zel Custom Manufacturing, LLC, et al., | : |
|     Defendants. | : |

## MOTION OF DEFENDANT, VANCE OUTDOORS, INC., FOR SUMMARY JUDGMENT

Now comes Defendant, Vance Outdoors, Inc., by and through counsel, to hereby move this Court for summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure for the reason that there is no genuine issue of material fact, and Vance Outdoors is entitled to judgment as a matter of law. The grounds for this Motion are more fully set forth in the Memorandum in Support which is attached hereto and incorporated herein.

Respectfully submitted,

/s/ Michael J. McLane
Michael J. McLane (0038567)
David J. Heinlein (0040677)
140 East Town Street, Suite 1015
Columbus, OH 43215-5125
(614) 716-0983
(614) 228-8844 (Fax)
mike_mclane@staffdefense.com
david_heinlein@staffdefense.com
Attorneys for Defendant, Vance Outdoors, Inc.

## **MEMORANDUM IN SUPPORT**

**I.     IDENTIFICATION OF PARTIES**

Plaintiff Troy Rote (hereinafter "Mr. Rote") was injured while loading a .50 caliber rifle (hereinafter the "rifle") owned by Defendant Edward Grimm. This happened at the home of Defendants Gary and Judith Buyer, during a party. Plaintiff Amanda Rote (hereinafter "Mrs. Rote") is Mr. Rote's wife.

The firearm involved in this accident was a composite of two firearms. Mr. Grimm purchased an AR-15-style rifle from Vance Outdoor, as a complete firearm on December 12, 2006. (Exhibit A- Purchase Receipt; Grimm Depo. p. 15, l. 2-10.) Bushmaster Firearms International, LLC, (hereinafter "Bushmaster") is a company which manufactures and distributes firearms. Bushmaster manufactured and sold the AR15-type rifle in question to Vance Outdoors, Inc. Bushmaster was purchased by Remington Arms, and Remington has entered this case as a successor in interest to Bushmaster. Mr. Grim purchased the Zel Custom upper receiver fron Vance Outdoor on November 8, 2010 (Exhibit B- Purchase receipt; Grimm Depo. p.99 l. 16- p. 100 l. 6; p.101 l. 1-10). Zel Custom Manufacturing, LLC, (hereinafter "Zel Custom") is a company which manufactures and sells upper receivers to adapt an AR-15 –style lower receiver to a .50 rifle. Zel Custom manufactured and sold the upper receiver in question to Vance Outdoors, Inc. (Brendzel Depo. p. 74 - 75, 215 – 216) Mr. Grimm assembled the component parts into one .50 bolt-action rifle.

Defendants Gary and Judith Buyer (hereinafter "Buyer") were hosting a party on the property where the incident occurred. Gary and Judith Byer did not own the firearm or the ammunition involved in the incident. Gary Buyer request Mr. Grimm to bring the .50 rifle to the party. *(*Grimm Depo. p. 93 l. 17-23). Mr. Grimm and the Rotes were guests of Mr. Buyer.

Defendant Discount Distributors, Inc. dba Ammoman.com (hereinafter "Ammoman") is a company which engages in retail sale of firearm ammunition. Ammoman sold the ammunition used at the time of the incident. (Grimm Depo. p. 81 l, 22-25; p. 115 l. 8-15; pp. 123 l. 7- p. 124 l. 21). Defendant Direccion General de Fabricaciones Militares (hereinafter "FM") is a company which manufactured ammunition. It is alleged that FM manufactured the ammunition round used at the time of the incident.

## II. STATEMENT OF FACTS

### A. The Events Of September 10, 2011

This case arises from an out of battery detonation of the firearm while it was being loaded by Mr. Rote on September 10, 2011. On that date, Mr. Rote was a party guest at the home of Defendants Buyer, which was located in a somewhat rural area between Sunbury and Galena, Ohio. (Rote Depo. p. 47 l. 17-21). The Buyers own several acres of land, and would occasionally have get-togethers where guests would bring their firearms and shoot them near a pond on the property.

Defendant Grimm was also a party guest on the day of the incident. (Rote Depo. p.53 l. 21-24). He brought the .50 rifle to the party where he assembled it. *Id.* At the time of the accident, Mr. Rote was preparing to shoot the rifle. (Rote Depo. pp.70- 89). A .50 caliber cartridge was placed in the rifle and Mr. Rote was pushing the bolt home to secure the chamber. *Id.* It is claimed that the bolt was sticking, and Mr. Grimm advised Mr. Rote to shove the bolt forward as hard as he could. Mr. Rote pushed the bolt forward between his fingers. As he slammed the bolt home, the cartridge detonated, shoving the bolt back through his hand, causing injuries to Mr. Rote.

### B. The Rifle

The rifle was made from two different firearms. There was a lower receiver from a Bushmaster Rifle and a .50 upper receiver manufactured by Zel Custom. The lower receiver,

3

consisting of the firing mechanism, and stock, was made by Defendant Bushmaster as part of its complete AR15-type rifle. In its original form, the Bushmaster rifle was sold in an M-4 configuration, with a .223 barrel and upper receiver. In September of 2006, Vance Outdoors purchased the Bushmaster rifle and, then resold to Defendant Grimm (Exhibit A) on December 12, 2006.

Defendant Zel Custom made a custom upper receiver, (which is the barrel, muzzle brake, and chamber), which could fit on the any AR- style lower receiver. This provides the owner of a Modern Sporting Rifle a large caliber rifle at a lower cost than a complete, manufactured ,50 rifle. Brendzel T. In May of 2010, Vance Outdoors purchased the upper receiver from Zel Custom. In November of 2010, the rifle was sold to Defendant Grimm (Exhibits B & C). The box and the upper receiver were branded as a Zel Custom product. (Grim Depo. p. 147 l. 25- p. 148 l. 24) It was clear to Mr. Grimm when he bought the upper receiver that it was not a Vance Outdoors branded product. *Id.*

Vance Outdoor did not provide any instructions or warnings concerning the rifle parts. (Grimm Depo. p. 70 l. 2- p. 72 l. 24) There were instructions and parts in the box that Mr. Grimm purchased from Vance Outdoors. (Grimm Depo. p. 149 l. 5- p. 150 l. 9.) Mr. Grimm assembled the upper receiver to the Bushmaster lower receiver at his home, with the instructions and parts in the Zel Custom box that he purchased at Vance Outdoors. *Id.* Mr. Grimm did not call Vance for advice or have any agent of Vance assist in the assembly of the rifle. *Id.*

C. **Procedural History**

Plaintiffs originally filed this action in Ohio state court on September 9, 2013, against the named and unnamed defendants, including Vance Outdoors. Plaintiffs seek compensatory damages based on allegations that Vance Outdoors is liable for negligence, inadequate warning or instruction, nonconformance with manufacturer's representation, defective design, formulation,

4

and/or manufacture or construction, breach of implied and express warranties, supplier liability, and for loss of consortium. (Am. Compl., ¶¶ 33-43, 55-99).

Plaintiffs are Ohio residents, as are Vance Outdoors, Buyer, and Grimm; six of the other named defendants are residents of other states. DGFM is a foreign defendant, located in Buenos Aires, Argentina. (Def. DGFM's Notice of Removal, ¶ 12). On November 25, 2013, DGFM, as an agent of a foreign state, removed the action to this Court on the basis of federal question jurisdiction. (*see Id.*)

### III. LAW AND ARGUMENT

#### A. Summary Judgment Standard

Summary judgment is proper where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(a). No genuine dispute of material fact exists where the record "taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus., Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Ultimately the court evaluates "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). The court must draw all reasonable inferences in favor of the nonmoving party. *Burgess v. Fischer*, 735 F.3d 462, 471 (6th Cir. 2013).

A party asserting that a fact is genuinely disputed may not rely on the pleadings to establish that fact. Rule 56(c)(1) of the Federal Rules of Civil Procedure provides that:

> [a] party asserting that a fact … is genuinely disputed must support the assertion by … citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials.

That is, a party must "go beyond the pleadings." *Celotex v. Catrett,* 477 U.S. 317, 324 (1986). "A dispute is 'genuine' only if based on evidence upon which a reasonable jury could return a verdict in favor of the non-moving party." *Gallagher v. C.H. Robinson Worldwide, Inc.,* 567 F.3d 263, 270 (6th Cir. 2009).

### B. Product Liability Claims

As a seller or distributor of goods manufactured by another, Vance cannot be liable to plaintiffs on their product liability claims. Vance was not the manufacturer of the gun at issue or any of its component parts. Vance was not negligent in its handling of the product under section (A)(1) or (2) below or any other theory of liability established under (B) (1) - (8), inclusive. Vance Outdoors purchased the products from their manufacturer and resold the products to the consumer Mr. Grimm without changes, modifications or re-branding.

The Ohio Products Liability Act distinguishes between "manufacturers" and "suppliers" for the purposes of product liability claims. Ohio Rev. Code §2307.71. Manufacturers are considered primarily liable for injuries resulting from defective products. *Tekavec v. Van Waters & Rogers, Inc.,* 12 F.Supp.2d 672 (N.D. Ohio 1998). A manufacturer is defined as "[a] person engaged in a business to design, formulate, produce, create, make, construct, assemble, or rebuild a product or a component of a product." *Id.* §2307.71(A)(9). As detailed in the deposition of Michael Brendzel, Zel Custom was the manufacturer of the upper receiver that the plaintiff alleges was defective.

Alternatively, a supplier is defined, in pertinent part, as "a person that, in the course of a business conducted for the purpose, sells, distributes, leases, prepares, blends, packages, labels, or otherwise participates in the placing of a product in the stream of commerce." *Id.* §2307.71(A)(15)(a)(i). For the purposes of litigation, a party cannot be considered both a manufacturer and a supplier. *Id.* §2307.71(A)(15)(b)(i). Indeed, the fact that an entity is a supplier precludes it from being considered a manufacturer. *Id.* The two definitions are mutually exclusive.

6

*See Brown v. McDonald's Corp.* (1995), 101 Ohio App.3d 294, 297; *Tekavec v. Van Waters & Rogers, Inc.,* 12 F.Supp.2d at 678.

Ohio Revised Code §2307.78 sets forth when a supplier, who did not manufacture the goods, can be held liable for products liability:

> (A) Subject to division (B) of this section, a supplier is subject to liability for compensatory damages based on a product liability claim **only if** the claimant establishes, by a preponderance of the evidence that either of the following applies:
>
> (1) The supplier in question was negligent and that, negligence was a proximate cause of harm for which the claimant seeks to recover compensatory damages;
>
> (2) The product in question did not conform, when it left the control of the supplier in question, to a representation made by that supplier, and that representation and the failure to conform to it were a proximate cause of harm for which the claimant seeks to recover compensatory damages. A supplier is subject to liability for such a representation and the failure to conform to it even though the supplier did not act fraudulently, recklessly, or negligently in making the representation.
>
> (B) A supplier of a product is subject to liability for compensatory damages based on a product liability claim under sections 2307.71 to 2307.77 of the Revised Code, as if it were the manufacturer of that product, if the manufacturer of that product is or would be subject to liability for compensatory damages based on a product liability claim under sections 2307.71 to 2307.77 of the Revised Code **and** any of the following applies:

(1) The manufacturer of that product is not subject to judicial process in this state;

(2) The claimant will be unable to enforce a judgment against the manufacturer of that product due to actual or asserted insolvency of the manufacturer;

(3) The supplier in question owns or, when it supplied that product, owned, in whole or in part, the manufacturer of that product;

(4) The supplier in question is owned or, when it supplied that product, was owned, in whole or in part, by the manufacturer of that product;

(5) The supplier in question created or furnished a manufacturer with the design or formulation that was used to produce, create, make, construct, assemble, or rebuild that product or a component of that product;

(6) The supplier in question altered, modified, or failed to maintain that product after it came into the possession of, and before it left the possession of, the supplier in question, and the alteration, modification, or failure to maintain that product rendered it defective;

(7) The supplier in question marketed that product under its own label or trade name;

(8) The supplier in question failed to respond timely and reasonably to a written request by or on behalf of the claimant to disclose to the claimant the name and address of the manufacturer of that product.

R.C. §2307.78 Liability of Supplier (emphasis added)

This statute was interpreted by the Eighth District Court of Appeals, in *Buchman v. QVC, Inc.* The plaintiff was injured by an allegedly defective water sports tube. *Buchman v. QVC, Inc.*, 98-LW-0446 (Ohio App. 8 Dist.). She then filed suit alleging liability against the manufacturers and QVC, the product's retail seller. *Id.* The court addressed R.C. 2307.78(B)(7) which provides for seller liability only in situations where the manufacturer would be liable and the seller has distributed that product under its own trade name or label, citing *Brown v McDonald Corp.*, 101 Ohio App 3d 294 (1995). *Id.* The court found QVC to be in the business of marketing products for companies and held that they did not distribute the product under their own trade name. *Id.*

Vance Outdoor is in the business of buying and reselling the products of others. Although the plaintiff alleges he was injured by a gun or components parts purchased at Vance Outdoors, Inc., Vance did not modify, rename, rebrand or made any changes to either a gun or any component

8

parts, according to the testimony of Mr. Grimm, or Mr. Rote. The manufacturers of the Bushmaster firearm from 2006 and Zel Custom upper receiver from 2010 have been identified and are participating as Defendants to this suit. Both manufacturers of the products sold by Vance Outdoor have been served with process in the state of Ohio. Zel Custom is insured for liability in this suit and that insurer is defending this lawsuit. (Brendzel Depo. p, 221 l.18 – 20) Vance has no ownership interest in any of the manufacturers, as determined through the discovery process. Vance did not contribute to the design of the firearm or its modification (see Brendzel Depo.)

*Buchman v. QVC, Inc., supra,* also addresses a claim under R.C. 2307.78(A) which allows for a supplier to be held liable for compensatory damages on a product liability claim only if the claimant can establish by a preponderance of the evidence that the supplier was either negligent and this negligence caused the aggrieved harm or the supplier made a misrepresentation concerning the product upon which the claimant relied to his detriment. *Id.* "A seller of chattel manufactured by a third person who neither knows nor has reason to know that it is, or is likely to be, dangerous, is not liable in an action for negligence for harm caused by the dangerous character or condition of the chattel because of his failure to discover the danger by an inspection or test of the chattel before selling it." *Buchman*; quoting *Brown v. McDonald Corp.*, (1995) 101 Ohio App.3d 294, 302.

The court found that since QVC, as supplier, did not alter the product, it had no duty to discover any latent design flaw, and made no representations regarding the character or quality of the product, they could not be held negligent for its quality. *Id.* Mr. Grimm's testimony is that there were no representations from Vance Outdoor, other than the material provided with the product by Zel Custom. *Id.* There is no evidence that Vance Outdoor was aware of any problems, defect or design flaw in the subject product and Vance made no representations about the Zel

9

Custom product or its modifications. (Grimm Oct. 2, 2015 T. pp.147 – 151) Under the Ohio statute, no liability attaches.

Vance had no duty to discover the claimed defect in plaintiff's purchased firearm or upper receiver. No alterations were made to the product while it was in Vance's possession and no representations about the product were made to Mr. Grimm other than those of the manufacturers. R.C. 2307.78 does not impose liability. Vance is entitled to judgment as a matter of law based on plaintiffs' product liability claims. There are no material issues of fact, so summary judgment should be granted in favor of Vance.

### C. Plaintiffs' Common Law Claims

In 1997, the Ohio General Assembly enacted the Ohio Product Liability Act (OPLA) and an amendment to the OPLA passed in 2005. The specific language of the amendment stated that "Sections 2307.71 to 2307.80 of the Revised Code are intended to abrogate all common law product liability claims or causes of action." Ohio Rev. Code §2307.71(B). This provision as abolishes common law negligence claims where the basis of the claim is negligent design, marketing, formulation, production, construction, creation, assembly, rebuilding, testing or marketing of a product or claim based on the absence or inadequacy of any warning. *Miles v. Raymond Corp.*, 612 F. Supp. 2d 913 (N.D. Ohio 2009). Product defect claims have also been added to this list. *CCB Ohio LLC v. Chemque, Inc.*, 649 F.Supp. 2d 757 (S.D. Ohio 2009). As a result, nearly all product liability claims are subject to the OPLA.

Plaintiffs explicitly assert numerous statutory claims under the OPLA. However, they additionally pursue common law claims for negligence and breach of implied and express warranties.

The OPLA defines a "product liability claim" as follows:

> (13) . . . a claim or cause of action that is asserted in a civil action pursuant to sections 2307.71 to 2307.80 of the Revised Code and that seeks to recover compensatory damages from a manufacturer or

> supplier for death, physical injury to person, emotional distress, or physical damage to property other than the product in question, that allegedly arose from any of the following:
> (a) The design, formulation, production, construction, creation, assembly, rebuilding, testing, or marketing of that product;
> (b) Any warning or instruction, or lack of warning or instruction, associated with that product;
> (c) Any failure of that product to conform to any relevant representation or warranty.

Ohio Rev. Code §2307.71(A)(13).

Plaintiffs' negligence and warranty claims stem from the physical injuries from a product, the rifle, in which they seek compensatory damages. The OPLA explicitly supersedes and governs these claims. Plaintiffs' negligence and warranty claims may be pursued only as they relate to supplier liability under the OPLA. *Id.* §§2307.71 and 2307.78; *see also Luthman v. Minster Supply Co.,* 2008-Ohio-165.

IV. **SUMMARY:**

Vance Outdoors is the quintessential example of a supplier. The store is not involved in the formative stages—designing, construction, assembly, or rebuilding products. Its business is limited to the sale of products directly to consumers. For this reason, Vance Outdoors quite clearly meets the statutory definition of a supplier. Thus, it cannot be liable for statutory product defects claims, as alleged under Ohio Rev. Code §§ 2307.71 to 2307.77, related to the rifle parts. Such a determination can be made as a matter of law.

Whether Plaintiffs' negligence claim is viewed as a products liability claim or a common law claim, the analysis is the same. *Becton v. Starbucks Corp.,* 491 F.Supp.2d 737, 746 n.3 (S.D. Ohio 2007). Plaintiffs must establish the existence of a duty, a breach of that duty, and an injury proximately resulting therefrom. *Menifee v. Ohio Welding Prod., Inc.* (1984), 15 Ohio St.3d 75, 77. The existence of a duty depends on foreseeability of the injury which, in turn, usually depends on the defendant's knowledge. *Id.* Ohio law holds that, "[a] seller of a chattel manufactured by a third

11

person, who neither knows nor has reason to know that it is, or is likely to be, dangerous, is not liable in an action for negligence for harm caused by the dangerous character or condition of the chattel because of his failure to discover the danger by an inspection or test of the chattel before selling it." *Brown v. McDonald's Corp.* (1995), 101 Ohio App.3d 294, 302; (quoting Restatement (Second) of Torts §402 (1965)). In determining whether the supplier should have foreseen the risks involved, only those circumstances which it perceived, or should have perceived, at the time of its actions should be considered. *Menifee,* 15 Ohio St.3d at 77.

Vance Outdoors was not negligent and did not breach a duty owed to Plaintiffs, which was the proximate cause of the injuries and damages alleged. Plaintiffs generally reference a duty based "the dangers and hazards associated with the use of the . . . products." (Am. Comp., ¶ 38). However, they cannot demonstrate that Vance Outdoors knew or had any reason to know of any problems when it sold the upper receiver. Further, the evidence provides no support for such an allegation.

The testimony establishes that Vance Outdoors had never before received any complaints or other notice of problems with the rifle parts. Vance Outdoors did not have any role in, nor did it modify or otherwise change, the design, manufacture, or labeling of the rifle parts Vance Outdoors' role as the supplier of the Bushmaster Rifle and Zel Custom Upper. There is no basis for a claim of negligence, even when the facts are viewed in a light most favorable to plaintiff. Vance Outdoors is entitled to summary judgment on all of Plaintiffs' claims.

Respectfully submitted,

/s/ Michael J. McLane
Michael J. McLane (0038567)
David J. Heinlein (0040677)
140 East Town Street, Suite 1015
Columbus, OH 43215-5125
(614) 716-0983/(614) 228-8844 (Fax)
mike_mclane@staffdefense.com
david_heinlein@staffdefense.com
Attorneys for Defendant, Vance Outdoors, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on 23rd day of June, 2017, a copy of the foregoing was served upon all counsel of record through the Court's CM/ECF system.

/s/ Michael J. McLane
Michael J. McLane





EXHIBIT A

**VANCE'S**

3723 Cleveland Avenue
Columbus, Ohio  43224
614-471-7000

ITEMS PURCHASED

J.                          12/12/2006 2:48:41 PM

EDWARD GRIMM

TAURUS 2-441031T M410 3 72532760211
    LOG: 65263  SERIAL: zj426129
EDWARD GRIMM
5808 HERITAGE LAKES DR
HILLIARD, OH 43026
Signature_____    429.99
ULTRAMAX CB45CN2 45 COL 75510404554
    2@ $26.99                          53.98
CCI 22LR HS BZR RIMFIRE 07668350021
    ITEM DISCOUNT $3.00                 9.99
WIN AA TRGT LOAD 410 AA 02089200489    64.99
BUSHMASTER BCWA3F 16M4  60420607225
    LOG: 62888  SERIAL: L425200
EDWARD GRIMM
5808 HERITAGE LAKES DR
HILLIARD, OH 43026
Signature_____
    ITEM DISCOUNT $130.00              899.99
              SUBTOTAL               1458.94
              SALES TAX1               98.48
              TOTAL PURCHASE         1557.42

           Credit Card               1557.42

         CHANGE          0.00

         TODAY YOU SAVED 133.00

TRAN# 168700  STR# 002  REG# 2

RETURNS OF GENERAL MERCHANDISE,30DAYS IN PKG
W/ RECEIPT.  FIREARM RETURNS MUST BE MADE IN
NEW CONDITION IN 24HRS. $40 FEE.

*Handwritten note:* $960.- w/tax

**VANCE'S**

723 Cleveland Avenue
lumbus, Ohio  43224
614-471-7000

1S PURCHASED

                         12/12/2006 2:48:41 PM

M410 3 72532760211
3 SERIAL: zj426129

:ES DR
6
                                      429.99
15 COL 75510404554
                                       53.98
MFIRE 07668350021
NT $3.00                                9.99
10 AA 02089200489                      64.99
'6M4  60420607225
ERIAL: L425200

DR

$130.00                               899.9

        SUBTOTAL                     1458.9
        SALES TAX1                     98.
        TOTAL PURCHASE               1557.

     Credit Card                     1557

   \NGE         0.0

VED 133.00

1# 002  REG# 2

ANDISE,30DAYS IN
JRNS MUST BE MADE
:40 FEE.



```
VANCE OUTDOORS INC.
3723 CLEVELAND AVENUE
COLUMBUS  OH 43224
614-471-7000

RECEIPT
11/06/10 02:16:44 PM
RECEIPT 158996      STORE 1
REGISTER 101  Clerk Katrina B
Slsprsn: James M

Customer


Item            Price     Qty    Total
----------------------------------------
10130191 TACTILITE UL 50BMG UPPER 29
ZEL CUSTOM MANUFACTURING 50BMG
T1-50-U29     $1849.99       1  $1849.99
$1899.99     3 % Off  $50.00 Off
02089200489 WIN AA419 AA 41OGA 25CT
WINCHESTER AMMO
AA419 CS       $89.99       1    $89.99
02089201361 20GA 2-3/4  7 SHOT 1 OZ
WINCHESTER AMMO
AAH207 BX       $8.99       1     $8.99
10021992 DKG 50BMG 4ROUND PKS
DKG
50BMG          $29.99       8   $239.92
                Total Units        11
                Subtotal      $2188.89
                Discount        $50.00
                TAX            $147.75
                Total         $2336.64
11/06/10 02:16:37 PM    VISA  $2336.64
xxxxxxxxxxxx0653     08489B
```



EXHIBIT B

$1975.— with tax

Total $2935.—



# Purchase Order # 27704

## ZEL CUSTOM MANUFACTURING

| VENDOR | SHIP TO | BILL TO |
|---|---|---|
| ZEL CUSTOM MFG | Vance Outdoors Inc. | VANCE OUTDOORS INC. |
| 11419 CHALLENGER AVE | 3723 CLEVELAND AVENUE | 3723 CLEVELAND AVENUE |
| ODESSA FL 33556 | COLUMBUS, OH 43224 | COLUMBUS, OH 43224 |
| U.S.A. | U.S.A. | U.S.A. |
| TEL. | TEL. 614-471-7000 | TEL. 614-471-7000 |
| FAX | FAX 614-471-2134 | FAX 614-471-2134 |

COMMENTS:

| ORDER DATE | SHIP DATE | CANCEL DATE | TERMS |
|---|---|---|---|
| 05/06/2010 | | | 0.00 NET 0 |

| Brand | ZEL CUSTOM MANUFACTURING | | Style | T1-50-U24 | | Desc | TACTILITE UL 50BMG UPPER 24" | | | | UPC | 10130189 | SUB DEPARTMENT | UPPER REC |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ATTR1 | SIZE | ATTR2 | QUAN | COST | RETAIL | TOTAL RETAIL | LANDED COST | TOTAL COST | MARKUP | | | | | |
| | 50BMG | | 1 | $1,397.35 | $1,849.99 | $1,849.99 | $1,397.35 | $1,397.35 | 24.47% | | | | | |
| SUBTOTAL FOR STYLE | T1-50-U24 | | 1 | | | $1,849.99 | | $1,397.35 | 24.47% | | | | | |

| Brand | ZEL CUSTOM MANUFACTURING | | Style | T1-50-U29 | | Desc | TACTILITE UL 50BMG UPPER 29" | | | | UPC | 10130191 | SUB DEPARTMENT | UPPER REC |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ATTR1 | SIZE | ATTR2 | QUAN | COST | RETAIL | TOTAL RETAIL | LANDED COST | TOTAL COST | MARKUP | | | | | |
| | 50BMG | | 1 | $1,435.16 | $1,899.99 | $1,899.99 | $1,435.16 | $1,435.16 | 24.46% | | | | | |
| SUBTOTAL FOR STYLE | T1-50-U29 | | 1 | | | $1,899.99 | | $1,435.16 | 24.46% | | | | | |

| TOTAL UNITS ORDERED | 2 | TOTAL RETAIL | $3,749.98 | | | | |
|---|---|---|---|---|---|---|---|
| TOTAL DOLLARS ORDERED | $2,832.51 | TOTAL MARKUP | $917.47 | TOTAL MARKUP PERCENT | 24.47% | | |



EXHIBIT